IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF FIFTEEN PRESS ORGANIZATIONS FOR ACCESS TO SEALED SEARCH WARRANT RECORDS | Case No. _____<br><br>Chief Judge James E. Boasberg |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR ACCESS TO SEALED SEARCH WARRANT RECORDS**

On August 22, 2025, FBI agents executed a search warrant at the Washington, DC office of John Bolton, a former National Security Advisor to President Trump. Pursuant to Local Rule 57.6, fifteen news organizations that reported on the search (the "Press Applicants") respectfully request that the Court unseal the search warrant and related filings (the "Search Warrant Records").[1] Specifically, the Press Applicants seek access to: (1) the search warrant and all attachments; (2) the warrant application; (3) all probable cause affidavits filed in support of the warrant application; (4) any motion to seal the warrant-related records; (5) any order sealing the warrant-related records; (6) any warrant return; and (7) any other records filed with this Court in connection with the search warrant.

These Search Warrant Records are judicial records subject to the First Amendment and common law right of access. Given the enormous public interest in and historic significance of a search warrant executed at the office of a former presidential advisor, any potential interest in their continued secrecy is clearly outweighed. The Court should grant this application, unseal the Search Warrant Records, and ensure that this matter proceeds with maximum transparency.

---

[1] The Press Applicants are The New York Times Company, Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Axios Media Inc., Bloomberg L.P., Cable News Network, Inc., Dow Jones & Company, Inc., publisher of The Wall Street Journal, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBCUniversal News Group, NOTUS (Allbritton Journalism Institute), POLITICO LLC, Reuters News & Media Inc., WP Company LLC d/b/a The Washington Post, and WUSA-TV.

**FACTUAL BACKGROUND**

John Bolton has worked as an attorney and diplomat at multiple levels of the federal government across several presidential administrations. A graduate of Yale University and Yale Law School, Bolton began his federal service in the Reagan Administration—first at the U.S. Agency for International Development and then as an Assistant Attorney General at the Department of Justice—before joining the State Department under President George H.W. Bush and again under President George W. Bush.[2] In August 2005, Bolton was appointed as U.S. Ambassador to the United Nations, a position he held until December 2006.[3]

Bolton served as President Donald Trump's third National Security Advisor during his first term.[4] In that position, Bolton and President Trump publicly disagreed about many significant foreign policy issues. For example, Bolton supported a regime change in Iran, while Trump said he did not.[5] Bolton also claimed that North Korean missile tests in 2019 violated United Nations resolutions, while Trump said he "view[ed] it differently."[6]

---

[2] Conor Finnegan, *Everything you need to know about John Bolton, Trump's former national security adviser,* ABC News (June 21, 2020), https://abcnews.go.com/Politics/john-bolton-trumps-expected-pick-deputy-secretary-state/story?id=44146193.

[3] *U.N. Ambassador John Bolton to Step Down*, CBS News (Dec. 4, 2006), https://www.cbsnews.com/news/un-ambassador-john-bolton-to-step-down/.

[4] Mark Landler & Maggie Haberman, *Trump Chooses Bolton for 3rd Security Adviser as Shake-Up Continues*, N.Y. Times (March 22, 2018), https://www.nytimes.com/2018/03/22/us/politics/hr-mcmaster-trump-bolton.html.

[5] Peter Baker & Maggie Haberman, *Trump Undercuts Bolton on North Korea and Iran*, N.Y. Times (May 28, 2019), https://www.nytimes.com/2019/05/28/us/politics/trump-john-bolton-north-korea-iran.html.

[6] *Id.; see also* Motoko Rich, *John Bolton Says North Korean Missile Tests Violated U.N. Resolutions,* N.Y. Times (May 24, 2019), https://www.nytimes.com/2019/05/24/world/asia/john-bolton-north-korea.html; *see also* @realDonaldTrump, X (May 25, 2019 9:32 PM), https://x.com/realDonaldTrump/status/1132459370816708608.

Bolton's tenure as National Security Advisor concluded in September 2019, and accounts differed as to whether Bolton resigned or was fired.[7] It is undisputed, however, that Bolton became a vocal critic of Trump after leaving the administration.[8] In January 2020, for example, the press reported that, according to Bolton, Trump told Bolton in August 2019 that Trump wanted to withhold aid from Ukraine until officials there pursued investigations into Democrats, including the Biden family.[9] This report became public during the impeachment inquiry into allegations that Trump had pursued this type of quid-pro-quo arrangement. *Id.* Trump denied Bolton's alleged version of events. *Id.*

The Trump administration subsequently objected to the publication of Bolton's memoir, claiming that the book contained classified information that needed to be removed prior to publication.[10] Bolton disagreed, stating that the book did not contain any sensitive information. *Id.* The Department of Justice sued to stop publication, but the effort was unsuccessful and Bolton's book, titled *The Room Where It Happened: A White House Memoir*, was published in

---

[7] Shannon Pettypiece et al., *Trump fires John Bolton as national security adviser*, NBC News (Sept. 10, 2019), https://www.nbcnews.com/politics/donald-trump/trump-fires-national-security-adviser-john-bolton-n1051986.

[8] *See, e.g.,* Josh Wingrove, *Bolton Says Trump Aids Foes With Disarray on Russia Bounty News*, Bloomberg (July 1, 2020), https://www.bloomberg.com/news/articles/2020-07-01/bolton-declines-to-say-if-he-briefed-trump-on-russia-bounties?sref=XQyF66PX.

[9] Maggie Haberman & Michael S. Schmidt, *Trump Tied Ukraine Aid to Inquiries He Sought, Bolton Book Says,* N.Y. Times (Jan. 26, 2020), https://www.nytimes.com/2020/01/26/us/politics/trump-bolton-book-ukraine.html.

[10] Hallie Jackson & Allan Smith, *White House objects to publication of Bolton's book, demands classified info be removed first*, NBC News (Jan. 29, 2020), https://www.nbcnews.com/politics/trump-impeachment-inquiry/white-house-seeks-block-publication-bolton-s-book-demands-classified-n1125666.

June 2020.[11] Bolton's book described his perspective on his 17 months as National Security Advisor, and he generally characterized Trump negatively.[12] The book also contained Bolton's account of Trump withholding aid from Ukraine unless Ukraine agreed to investigate alleged wrongdoing by Democrats, including Joseph Biden. *Id.*

Trump denied Bolton's version of events, calling it "a compilation of lies and made up stories, all intended to make me look bad."[13] Trump maintained that Bolton had broken the law by publishing classified information, asserting that he "should be in jail, money seized, for disseminating, for profit, highly Classified information."[14] In September 2020, the Justice Department opened a criminal investigation into whether Bolton unlawfully disclosed classified information in his memoir.[15] The Justice Department closed the investigation in June 2021.[16]

Early in his second term, Trump revoked Bolton's security clearance and cancelled his security detail, which had been assigned to Bolton due to threats against him from Iran.[17] Bolton

---

[11] Katelyn Polantz, *Federal judge denies Trump administration's attempt to block release of Bolton's book*, CNN (June 20, 2020), https://www.cnn.com/2020/06/20/politics/judge-john-bolton-book.

[12] Peter Baker, *Five Takeaways From John Bolton's Memoir*, N.Y. Times (June 18, 2020), https://www.nytimes.com/2020/06/18/us/politics/john-bolton-memoir-takeaways.html.

[13] @realDonaldTrump, X (June 18, 2020 9:08 AM), https://x.com/realdonaldtrump/status/1273603410340843520

[14] @realDonaldTrump, X (June 22, 2020 12:39 AM), https://x.com/realdonaldtrump/status/1275287274213777413; @realDonaldTrump, X (June 23, 2020 6:28 AM), https://x.com/realDonaldTrump/status/1275375135483146241

[15] Katie Benner, *Justice Dept. Opens Criminal Inquiry Into John Bolton's Book*, N.Y. Times (Sept. 24, 2020), https://www.nytimes.com/2020/09/15/us/politics/john-bolton-book-criminal-investigation.html.

[16] Michael S. Schmidt & Katie Benner, *Justice Dept. Ends Criminal Inquiry and Lawsuit on John Bolton's Book*, N.Y. Times (June 16, 2021), https://www.nytimes.com/2021/06/16/us/politics/john-bolton-book-justice-department.html.

[17] John Sakellariadis, *Trump ends John Bolton's security detail*, Politico (Jan. 21, 2025), https://www.politico.com/news/2025/01/21/trump-bolton-security-detail-00199751.

continued to publicly criticize Trump during his second term, publishing opinion columns in The Wall Street Journal and appearing as a political commentator on various news outlets.[18] In a media appearance on August 10, 2025, for example, Bolton criticized Trump's decision to invite Russian President Vladimir Putin to Alaska and questioned Trump's strategy on peace talks.[19]

At approximately 7:00 a.m. on August 22, 2025, FBI agents conducted a search of Bolton's home in Bethesda, Maryland,[20] and of his office in Washington, DC.[21] These searches were reportedly related to an investigation into the potential mishandling of classified information. *Id.* In quick succession, several Trump administration officials appeared to publicly acknowledge the searches. At 7:03 a.m., FBI Director Kash Patel posted online, "NO ONE is above the law… @FBI agents on mission."[22] At 7:16 a.m., Deputy FBI Director Dan

---

[18] *See, e.g.,* John Bolton, *Chaos Is Embedded in Trump's DNA*, WSJ (May 1, 2025), https://www.wsj.com/opinion/chaos-is-embedded-in-trumps-dna-foreign-policy-0511581f; CNN, *Bolton: 'Trump did not lose, but Putin clearly won'*, YouTube (Aug, 15, 2025), https://www.youtube.com/watch?v=EY9mwuIMFKM; Alex Nitzberg, *John Bolton declares hiking US defense budget the 'most important priority in foreign affairs today'*, FOX News (Dec. 3, 2024), https://www.foxnews.com/politics/john-bolton-declares-hiking-us-defense-budget-most-important-priority-foreign-affairs-today.

[19] Alexandra Hutzler, *A look at Donald Trump and John Bolton's yearslong tumultuous relationship*, ABC News (Aug. 22, 2025), https://abcnews.go.com/Politics/donald-trump-john-boltons-yearslong-tumultuous-relationship/story?id=124885239.

[20] The Press Applicants have moved in the U.S. District Court for the District of Maryland to unseal warrant-related records pertaining to the search of Bolton's home. That motion has been docketed as a new miscellaneous action, Case No. 8:25-mc-539-TJS.

[21] Eric Tucker, *FBI searches home and office of ex-Trump national security adviser John Bolton*, Associated Press (Aug. 22, 2025), https://apnews.com/article/trump-fbi-bolton-patel-records-home-search-d02cca9e513601115262727ce45be3d65; Isabelle Khurshudyan, *'Militarization of politics': How bucolic Bethesda woke up to FBI search on John Bolton*, CNN (Aug. 22, 2025), https://www.cnn.com/2025/08/22/politics/how-bethesda-woke-up-to-fbi-raid-on-john-bolton; Myles Miller, *FBI Searches Home of Trump Adviser Turned Critic John Bolton*, Bloomberg (Aug. 22, 2025), https://www.bloomberg.com/news/articles/2025-08-22/fbi-searches-home-of-trump-critic-bolton-over-documents-probe?sref=XQyF66PX.

[22] Kash Patel, X (Aug. 22, 2025, 7:03 AM), https://x.com/FBIDirectorKash/status/1958847495028584529.

Bongino responded to Patel's post, writing that "Public corruption will not be tolerated."[23] At 7:45 a.m., Attorney General Pam Bondi further responded, "America's safety isn't negotiable. Justice will be pursued."[24] Later that day, Vice President JD Vance also acknowledged the searches and disclosed that "[c]lassified documents are certainly part of it."[25] Bolton also confirmed that the "administration executed search warrants against my home and office."[26]

## ARGUMENT

Search warrants and related filings are presumptively public as a matter of both law and custom in this and other federal courts. *See, e.g., In re Application of WP Co. (In re WP II)*, 201 F. Supp. 3d 109, 121 (D.D.C. 2016) ("warrant applications and receipts are routinely filed with the clerk of court without seal") (quoting *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records (In re NYT)*, 585 F. Supp. 2d 83, 88 (D.D.C. 2008)); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1193-94 (9th Cir. 2011) (same); Fed. R. Crim. P. 41(i) ("The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized."). In this Court, therefore, "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available." *In re NYT*, 585 F. Supp. 2d at 88 n.8.

---

[23] Dan Bongino, X (Aug. 22, 2025, 7:16 AM), https://x.com/FBIDDBongino/status/1958850735321264287.

[24] Pamela Bondi, X (Aug. 22, 2025, 7:45 AM), https://x.com/AGPamBondi/status/1958858061214371962.

[25] Alexandra Marquez, *Vance denies the FBI is investigating John Bolton because he's a Trump critic*, NBC News (Aug. 22, 2025), https://www.nbcnews.com/politics/politics-news/vance-denies-bolton-investigation-stems-trump-criticism-rcna226604.

[26] John Bolton, X (Aug. 26, 2025, 7:32 AM), https://x.com/AmbJohnBolton/status/1960304415195234525.

6

The press and public have First Amendment and common law rights of access to the Search Warrant Records. *Id.* at 87 (recognizing both First Amendment and common-law right of access to warrant materials). The need to vindicate this access right is particularly urgent here given the powerful interest in evaluating the government's request to search the home of a former high-ranking official turned prominent critic of the President and the Court's decision to allow that search. The right of access requires the prompt release of the Search Warrant Records with only those narrowly limited redactions the Court deems necessary.

## I. THE FIRST AMENDMENT RIGHT OF ACCESS APPLIES TO THE SEARCH WARRANT MATERIALS

It is well settled that "[t]he First Amendment guarantees a qualified right of public access to criminal proceedings and related court documents." *In re WP II*, 201 F. Supp. 3d at 117 (citing *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 603-04 (1982)). This right of access arises where (1) "the place and process have historically been open to the press and general public," and (2) "'public access plays a significant positive role in the functioning of the particular process in question.'" *In re NYT*, 585 F. Supp. 2d at 87 (quoting *Press-Enter. Co. v. Super. Ct. (Press-Enterprise II)*, 478 U.S. 1, 8-9 (1986)). Applying this "experience and logic" test, courts in this District have recognized that the First Amendment right of access applies to warrant materials. *In re Application of WP Co. (In re WP I)*, 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016); *In re NYT*, 585 F. Supp. 2d at 88. Here, too, experience and logic compel the conclusion that the First Amendment right of access applies to the Search Warrant Records.

**First**, search warrant materials have long been presumptively public, usually upon the return of the executed warrant, both in the District of Columbia and other jurisdictions. *In re WP II*, 201 F. Supp. 3d at 121; *In re NYT*, 585 F. Supp. 2d at 88 (noting that warrant materials have been publicly available as matter of "routine historical practice"). As the court recognized in *In*

*re NYT*, the existence of the common-law right of access to warrant materials also satisfies the "experience" prong of the test. 585 F. Supp. 2d at 89 ("Therefore, the fact that there is a common law tradition of access to warrant materials—which is acknowledged by the government in this case—weighs strongly in favor of a First Amendment qualified right of access to warrant materials."). Experience thus counsels that warrant materials should be presumptively available to the public upon the warrant's execution and return to the magistrate.

**Second**, courts have recognized several strong public policies advanced by access to warrant materials that satisfy the "logic" prong of the test. As the Fifth Circuit recently observed, "the right of access promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017); *see also In re NYT*, 585 F. Supp. 2d at 90 ("The fact that proceedings are open demonstrates to the public that judicial processes are fair and that there is nothing to hide."). This openness "'gives assurance that established procedures are being followed and that deviations will become known' and corrected." *In re NYT*, 585 F. Supp. 2d at 90. Especially given the strong public interest in the investigation of a critic of the President, these policy considerations firmly support the First Amendment right of access to these materials where, as here, the warrants have been executed.

To overcome the public's First Amendment right of access, a party opposing disclosure must show that keeping the records secret advances a compelling governmental interest and is narrowly tailored to serve that interest. *Globe Newspaper*, 457 U.S. at 606-07; *In re NYT*, 585 F. Supp. 2d at 91. The Supreme Court has directed that "[t]he interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Super. Ct.* (*Press-Enterprise I*), 464 U.S. 501, 510 (1984).

"[T]he presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public . . . ." *United States ex rel. Permison v. Superlative Techs.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007). Indeed, Magistrate Judge Bruce E. Reinhart of the U.S. District Court for the Southern District of Florida weighed similar considerations when ordering the release of redacted versions of materials related to the search warrant executed at President Trump's Mar-a-Lago residence in August 2022. *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1260-65 (S.D. Fla. 2022). There, dozens of news organizations moved to intervene and unseal the search warrant and related papers, and the government moved to unseal the search warrant itself, and some related materials, but opposed unsealing the supporting affidavit. *Id.* at 1260. Magistrate Judge Reinhart unsealed the warrant and unsealed the affidavit with redactions. *Id.* at 1260, 1265. Acknowledging that an ongoing criminal investigation justified maintaining some information within the affidavit under seal, the court found that release of a redacted version was "a less onerous alternative to sealing the entire document." *Id.* at 1265. In reaching this decision, the court "reject[ed] the Government's argument that the present record justifies keeping the entire Affidavit under seal" and placed emphasis on "the intense public and historical interest in an unprecedented search of a former President's residence." *Id.* at 1265.

Here, too, continued sealing of the Search Warrant Records is improper given the official acknowledgement of the search, as well as the public interest both in monitoring the integrity of our country's national security system and in understanding the motivations of law enforcement activity. FBI leadership and Attorney General Bondi made statements nearly contemporaneously about the search, and Bolton himself acknowledged the search as well. *See supra* at 5. At a minimum, therefore, any already-public information within the Search Warrant Materials should

be unsealed. *See Wash. Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (rejecting claim that disclosure of plea agreement in highly publicized case could compromise ongoing criminal investigation because disclosure "would only have confirmed to the public what was already validated by an official source" and "could hardly have posed any additional threat to the ongoing criminal investigation").

No party could possibly identify a compelling government interest that would overcome the First Amendment right of access. To the contrary, given the enormous public interest and historic significance of a search warrant executed against a former presidential advisor, and given Bolton's and the government's acknowledgment of this search, the Search Warrant Records should be unsealed as promptly as possible, and any specific grounds for sealing particular information within the Search Warrant Records should be addressed with only narrow and limited redactions that the Court determines are necessary.

## II.  THE COMMON-LAW RIGHT OF ACCESS ALSO APPLIES TO SEARCH WARRANT MATERIALS

Under the common law, the public has a qualified right "to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This common-law right is "broader, but weaker" than the First Amendment access right. *In re WP II*, 201 F. Supp. 3d at 118. Courts in the D.C. Circuit have consistently held that warrant materials are "judicial [records]" subject to this common-law right of access because they are "central to a court's probable cause determination." *Id.* at 129 (quoting *Custer Battlefield*, 658 F.3d at 1193); *see also In re NYT*, 585 F. Supp. 2d at 87 n.2 (noting government conceded that warrant materials are subject to common-law right of access).

In determining whether the common law right of access requires unsealing a particular judicial record, a court must "balance the government's interest in keeping the document secret

against the public's interest in disclosure." *In re WP II*, 201 F. Supp. 3d at 118. Courts considering whether to order disclosure pursuant to the common-law right must weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (citing *United States v. Hubbard*, 650 F.2d 293, 317-22 (D.C. Cir. 1980)); *accord In re NYT*, 585 F. Supp. 2d at 92; *In re WP II*, 201 F. Supp. 3d at 118. Here, the *Hubbard* factors all point to the conclusion that the Search Warrant Records should be released.

The first and second factor weigh heavily against continued secrecy. The Search Warrant Records are historically significant and important to the public. *CREW v. DOJ*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing "weighty public interest in shining a light on the FBI's investigation of major political corruption" and importance of materials that "shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government"). Additionally, the search warrant has already been officially acknowledged by government officials as well as by Bolton. *See L.A. Times Commc'ns v. United States*, 28 F.4th 292, 298 (D.C. Cir. 2022) (reversing and remanding district court's denial of request to unseal search warrant executed on a senator and directing district court to consider "extensive media reporting relating to the Justice Department investigation, including the Senator's own acknowledgment of the investigation").

The third, fourth and fifth factors all "ask variations of the same question: to what extent harm to legitimate interests, including privacy or law enforcement interests, would result from

unsealing." *In re Application of L.A. Times Commc'ns to Unseal Ct. Records*, 628 F. Supp. 3d 55, 66 (D.D.C. 2022) (cleaned up). To the extent the government seeks to protect an ongoing investigation, or another party raises privacy concerns, this can be addressed with targeted redactions. *Id.* at 66-69 (these factors weighed against continued sealing of certain categories of information, but for redactions of other categories of information).

Finally, the sixth factor—the purposes for which the documents were introduced—also favors unsealing, as "the search warrant materials were 'central to the court's probable cause determination' and consequently weigh heavily in favor of disclosure." *Id.* at 69 (cleaned up) (quoting *In re WP II*, 201 F. Supp. 3d at 129).

Because all six common law access factors weigh against wholesale sealing of the Search Warrant Records, they should be released with only limited redactions only where "countervailing and compelling interests dictate otherwise." *Id.*

## CONCLUSION

For the foregoing reasons, the Press Movants respectfully request that the Court grant their application and promptly unseal the Search Warrant Records.

Dated: August 29, 2025          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Maxwell S. Mishkin*
Maxwell S. Mishkin (#1031356)
Charles D. Tobin (#455593)
Lauren P. Russell (#7567949)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
mishkinm@ballardspahr.com
tobinc@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Applicants*